UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL HICKS,<br>          Plaintiff<br><br>       v.<br><br>DISTRICT OF COLUMBIA,<br>          Defendant | Civil Action No. 15-1828 (CKK) |

**MEMORANDUM OPINION and ORDER**
(April 28, 2016)

Plaintiff Paul Hicks, a former employee of the District of Columbia's Office of the Inspector General ("OIG"), brings several claims against Defendant District of Columbia in connection with the alleged termination of his employment with OIG. The Amended Complaint presents a claim of racial discrimination under Title VII of the Civil Rights Act of 1964, as amended; a claim of age discrimination under the Age Discrimination in Employment Act of 1967, as amended; a claim of retaliation under the Federal False Claims Act ("FCA"); a claim of retaliation under the District of Columbia False Claims Act ("D.C. FCA"); and a claim of retaliation under D.C. Code § 1-615.51 *et seq*. Before the Court is Defendant's [13] Motion to Dismiss Counts 3 & 4 of Amended Complaint. Defendant seeks the dismissal of the retaliation claims under the Federal and D.C. false claims acts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Upon consideration of the pleadings,[1] the relevant legal authorities,

---

[1] The Court's consideration has focused on the following documents:

- Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 13;
- Pl.'s Mem. of Points & Auth. in Opp'n to Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 15; and
- Def.'s Reply in Supp. of their Mot. to Dismiss ("Def.'s Reply"), ECF No. 18.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

1

and the record for purposes of this motion, the Court DENIES Defendant's [13] Motion to Dismiss Counts 3 & 4 of Amended Complaint.

## I. BACKGROUND

For the purposes of the motion before the Court, the Court accepts as true the well-pleaded allegations in Plaintiff's Amended Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). The Court limits its presentation of the background to those facts relevant to the pending motion to dismiss.

**A. Statutory Framework: Federal False Claims Act**

"Ordinarily under the [False Claims Act], 'the government, or a party suing on its behalf, may recover for false claims made by the defendant to secure a payment by the government.' "[2] *Hoyte v. Am. Nat. Red Cross*, 518 F.3d 61, 63 n.1 (D.C. Cir. 2008) (quoting *United States ex rel. Bain v. Ga. Gulf Corp.,* 386 F.3d 648, 652 (5th Cir. 2004)). However, "[i]n a *reverse* false claim action under … [Section 3729(a)(1)(G)], 'the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated.' "[3] *Id.* (quoting *Ga. Gulf Corp.,* 386 F.3d at 653). Specifically, the Federal False Claims Act establishes liability for any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to

---

[2] In 2009, Congress amended the False Claims Act, and the relevant provisions were re-numbered. *See Pencheng Si v. Laogai Research Foundation*, 71 F. Supp. 3d 73, 86 (D.D.C. 2014); *id.* at 88-89 (describing 2009 changes to the reverse false claim provisions).

[3] The reverse false claim provision is the only substantive provision of the False Claims Act at issue in this case. *See* Pl.'s Opp'n at 5-8; Am. Compl. ¶¶ 55-56 (citing and describing the retaliation provision and the reverse false claim provision).

pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). The Federal False Claims Act, as amended in 2009, defines "obligation" as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." *Id.* § 3729(b)(3). Subject to exceptions not relevant here, a person liable under these provisions is liable to the United States Government for a civil penalty "plus 3 times the amount of damages which the Government sustains because of the act of that person." *Id.* § 3129(a)(1).

Finally, the Federal False Claims Act allows retaliation claims in connection with other provisions of the Act:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of *lawful acts* done by the employee, contractor, agent or associated others *in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter*.

31 U.S.C. § 3730(h)(1) (emphasis added). In other words, the False Claims Act creates a retaliation claim in circumstances where, in addition to satisfying other criteria, a person suffers retaliation as a result of "lawful acts … in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." *Id.*

The retaliation provision, which was "first added in 1986, was 'designed to protect persons who assist the discovery and prosecution of fraud and thus to improve the federal government's prospects of deterring and redressing crime.' " *U.S. ex rel. Schweizer v. Oce N.V.*, 677 F.3d 1228, 1237 (D.C. Cir. 2012) (citation omitted). Most significantly, the provision was amended in 2009 to add the final phrase in the provision, clarifying that a retaliation claim can be

3

based on "other efforts to stop 1 or more violations of" the False Claims Act. 31 U.S.C. § 3730(h)(1); *see Pencheng Si*, 71 F. Supp. 3d at 90 (describing version of retaliation provision prior to the 2009 amendments); Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111–21, § 4(a) & (d), 123 Stat. 1617, 1621–25 (amending retaliation provision).[4] These amendments significantly expanded the protection to whistleblowers under the Federal False Claims Act. *See U.S. ex rel. New Mexico v. Deming Hosp. Corp.*, 992 F. Supp. 2d 1137, 1163 (D.N.M. 2013) (amended version of the retaliation provision "represents a significant expansion of protection for [False Claims Act] whistleblowers") (footnote omitted).

Notwithstanding these changes, the essential elements of a retaliation claim under the False Claims Act remain the same. *See id.* A retaliation claim has "two basic elements": (1) protected activity by an employee and (2) "retaliation by the employer against the employee 'because of' those acts." *Schweizer*, 677 F.3d at 1237 (quoting *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 736 (D.C. Cir. 1998)). As stated above, in light of the 2009 amendments to the False Claims Act, protected activity includes both "lawful acts done by the employee … in furtherance of an action" under the False Claims Act and "other efforts to stop 1 or more violations of" the False Claims Act. 31 U.S.C. § 3730(h).

## B. Statutory Framework: D.C. False Claims Act

The parties agree that the relevant provisions of the D.C. False Claims Act are the same in all material respects as the provisions of the Federal False Claims Act. *See* Def.'s Mot. at 4-5; Pl.'s Opp'n at 3 n.1 ("Retaliation claims under the Federal False Claims Act and the D.C. False

---

[4] The provision was further amended in 2010 through the Dodd-Frank Act. *See* Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, § 1079A(c), 124 Stat. 1376, 2079 (amending retaliation provision).

Claims Act have the same elements. Moreover, the anti-retaliation provisions of both Acts are nearly identical. Therefore, the arguments proffered in the instant Opposition similarly apply to Plaintiff's retaliation claim under the D.C. False Claims Act.") (citations omitted). "The elements of a [D.C. False Claims Act] retaliation claim mirror, and are analyzed in a similar fashion to, a retaliation claim arising under the federal False Claims Act … ." *Campbell v. D.C.*, 972 F. Supp. 2d 38, 47 (D.D.C. 2013).[5] In addition, the District of Columbia Court of Appeals has stated that it is appropriate to look to Federal cases interpreting the Federal False Claims Act "for guidance in interpreting the [D.C.] FCA." *Grayson v. AT & T Corp.*, 980 A.2d 1137, 1146 n.25 (D.C. 2009), *reh'g en banc granted, opinion vacated in part on other grounds*, 989 A.2d 709 (D.C. 2010), and *on reh'g en banc*, *reissuing panel decision in part* 15 A.3d 219 (D.C. 2011); *see Grayson v. AT & T Corp.*, No. 07-CV-1264, slip opinion reissued Jan. 20, 2011, at 15 n.24, available at http://www.dccourts.gov/internet/documents/07-CV-1264_MTD.PDF. Bearing in mind the parallel nature of the two statutes, the Court now turns to the relevant provisions of the D.C. False Claims Act.

> The D.C. False Claims Act establishes civil liability for any person who
>
> [k]nowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the District, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the District[.]

---

[5] Amendments to the D.C. False Claims Act that became effective on March 19, 2013, aligned the District of Columbia statute with the Federal statute. *See* Medicaid Fraud Enforcement and Recovery Amendment Act of 2012, 2012 District of Columbia Laws 19-232 (Act 19-549), §2. Although certain background activities in this case occurred before the amendments took effect, the acts that form the actual basis of the retaliation claims subject to this motion occurred after the amendments became effective. Nor do the parties suggest anything to the contrary regarding the relevant statutory provisions.

D.C. Code. § 381.02(a)(6). This provision is identical to the reverse false claim provision of the Federal False Claims Act, with the exception that the Federal False Claims Act pertains to obligations to pay or transmit money to the *United States Government*, while the D.C. False Claims Act pertains to obligations to pay or transmit money to the *District of Columbia*. *Compare id. with* 31 U.S.C.A. § 3729(a)(1)(G); *see also* Medicaid Fraud Enforcement and Recovery Amendment Act of 2012, 2012 District of Columbia Laws 19-232 (Act 19-549), § 2(c). Like the Federal False Claims Act, the D.C. False Claims Act also includes retaliation claims in relation to the other substantive provisions of the statute:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment *because of lawful acts* done by the employee, contractor, agent, or associated others *in furtherance of an action under this subchapter or other efforts to stop one or more violations of this subchapter*.

D.C. Code § 2-381.04(a) (emphasis added). Just as with the substantive reverse false claim provision, the retaliation provision of the D.C. False Claims Act, amended in 2013, is identical to the analogous Federal provision. *Compare id. with* 31 U.S.C. § 3730(h)(1); *see also* Medicaid Fraud Enforcement and Recovery Amendment Act of 2012, 2012 District of Columbia Laws 19-232 (Act 19-549), § 2(d). But the Court notes, once again, that the D.C. False Claims Act pertains to retaliation in connection with violations of that act and, therefore, pertains to reverse false claims in connection with the *District of Columbia* rather than with the *United States Government*.

**C. Factual Background**

Plaintiff was hired by District of Columbia's Office of the Inspector General ("OIG") as an auditor in approximately October 2007. Am. Compl. ¶ 12. On or around October 11, 2010,

Plaintiff was promoted to Director of Medicaid Audits. *Id.* He served in that position until August 15, 2014. *Id.* In that role, Plaintiff's duties included performing and supervising audits pertaining to the D.C. Medicaid program. *Id.* ¶ 14. In approximately July 2011, Plaintiff began working on the "Nursing Home Performance" audit. *Id.* ¶ 17. In approximately August of that same year, Plaintiff discovered that approximately 100 million dollars in D.C. Medicaid payments should not have been paid to medical providers, in light of allegations of fraud by those providers, but rather should have been suspended. *Id.* ¶ 18. The following year, in approximately June 2012, Plaintiff submitted a draft audit report for "Nursing Home Performance" and identified poor quality control and internal control deficiencies in D.C. nursing facilities. *Id.* ¶ 20. Subsequently, in approximately March 2013, Plaintiff submitted an updated draft "Nursing Home Performance" report, which continued to identify those same deficiencies. *Id.* ¶ 23.

While the "Nursing Home Performance" report was still in progress, Plaintiff began working on the "Medicaid State Plain/Program Integrity" audit in approximately September 2012. *Id.* ¶ 21. In October 2013, Plaintiff reported his preliminary findings under the "Medicaid State Plan/Program Integrity" audit to Ronald King, Assistant Inspector General for Audits and Plaintiff's second-level supervisor. *Id.* ¶¶ 16, 24. Plaintiff specifically discussed the 100 million dollars in Medicaid payments that, allegedly, should not have been paid, which he discovered in the process of conducting these audits. *Id.* ¶ 24; *see also id.* ¶ 18. During October 2013, pursuant to King's instructions, Plaintiff met with several other OIG officials, together with King.[6] *Id.* ¶ 25. During that meeting, Plaintiff explained that the "suspended payments" finding ought to be

---

[6] Those officials were Susan Kennedy, Assistant Inspector General for OIG's Medicaid Fraud Control Unit, and Leroy Rose, another OIG auditor. Am. Comp. ¶ 25.

7

included in the "Medicaid State Plan/Program Integrity" audit report. *Id.* King expressed hesitation about including the finding in the audit report. During the first quarter of 2014, Plaintiff met with King and with several other OIG officials once again. *Id.* ¶ 26. Plaintiff alleges that King attempted to suppress the "suspended payments" finding and argued that following Plaintiff's recommendation would have negative implications for OIG's Medicaid Fraud Control Unit. *Id.* King told Plaintiff that the payments in question were unrelated to the "Medicaid State Plan/Program Integrity" audit and should not be discussed in that report. *Id.* On May 16, 2014, King issued Plaintiff an unsatisfactory mid-term performance review on the basis of making untimely progress in completing the audit report. *Id.* ¶ 27. As a result, Plaintiff's alternative work schedule was revoked. *Id.*

In approximately June 2014, Plaintiff submitted a draft "Medicaid State Plan/Program Integrity" audit report. *Id.* ¶ 29. Pursuant to King's orders, Plaintiff did not include the "suspended payments" finding in that draft report. *Id.* That same month, another OIG official informed Plaintiff that King wanted to fire Plaintiff. *Id.* ¶ 30. A month later, on or about July 22, 2014, Plaintiff submitted draft audit reports for "Medicaid State Plan/Program Integrity" and "Nursing Home Performance." *Id.* ¶ 31. The draft "Nursing Home Performance" report included a discussion of poor quality care and internal control deficiencies. *Id.* ¶ 31.

During a meeting of OIG's Audit Division Management Team on July 23, 2014, LaDonia Wilkins, Deputy Assistant Inspector General for Audits and Plaintiff's immediate supervisor, addressed allegedly unsatisfactory performance by the Management Team. *Id.* ¶¶ 15, 33. At that meeting, Wilkins stated that the several directors on the Management Team took too much time to complete audits and did not adequately manage their staff. *Id.* ¶ 33. On July 29, 2014, King cancelled the "Medicaid State Plain/Program Integrity" and "Nursing Home Performance" audit

reports, notwithstanding Wilkins' belief that those reports ought to be formally issued. *Id.* ¶ 34. Finally, on July 31, 2014, Wilkins terminated Plaintiff's employment, without explanation, effective August 15, 2014. *Id.* ¶ 35.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

As stated above, Defendant moves to dismiss only Counts 3 and 4, retaliation claims under, respectively, the Federal False Claims Act and the D.C. False Claims Act. In order to isolate the actual legal dispute before the Court, it is necessary first to trace the parties' arguments as they developed over the course of the briefs filed regarding the pending motion.

In Defendant's Motion to Dismiss Counts 3 & 4 of Amended Complaint, Defendant argues that those two retaliation claims necessarily fail because Plaintiff has not alleged that the District of Columbia submitted to itself or to the Federal government a false or fraudulent claim for payment. *See* Def.'s Mot. at 2. In essence, Defendant argues that the claims fail because Plaintiff has not alleged a traditional—"forward"—false claims violation. In Plaintiff's

9

Opposition, Plaintiff explains he is not alleging a retaliation claim based on a traditional false claim violation; rather, he is alleging retaliation claims based on *reverse* false claim violations. *See* Pl.'s Opp'n at 5-7. Notably, Plaintiff has explicitly conceded that a traditional or "forward" false claim violation cannot be the basis for his retaliation claim. *See* Pl.'s Opp'n at 5. Although neither the Amended Complaint nor Plaintiff's Opposition is as clear as desirable regarding the nature of Plaintiff's retaliation claims, it is apparent that Plaintiff's description is reflected in the allegations in the Amended Complaint. *See* Am. Compl. ¶¶ 56, 74 (citing reverse false claim provisions at 31 U.S.C. § 3729(a)(1)(G) and D.C. Code § 2-381.02(6)). In response to Plaintiff's clarification, Defendant argues that the Amended Complaint fails to state retaliation claims under the D.C. and False Claims Acts insofar as they are based on reverse false claim violations. Def.'s Reply 3-4. It is the dispute regarding the viability of retaliation claims based on *reverse* false claim violations—and only that dispute—that is now before the Court. So understood, the Court now proceeds to address the parties' arguments regarding those claims.

      Plaintiff claims that he engaged in protected activity under the Federal and D.C. False Claims Acts in his attempts to stop violations of the reverse false claim provisions in each of those statutes. *See* Pl.'s Opp'n at 7 (citing 31 U.S.C. § 3729(a)(1)(G) and D.C. Code. § 2-381.02(a)(6)). Specifically, he identifies the underlying violation as the District of Columbia's concealment of "the fact that the D.C. Medicaid Program should not have paid one hundred million dollars to medical providers who were alleged to have committed fraud." Pl.'s Opp'n at 7. Plaintiff argues that the District's decision to conceal this information, after Plaintiff informed officials in the Office of the Inspector General of the information, violates the provision of the False Claims Act that creates liability for a person who "knowingly conceals … an obligation to

pay or transmit money or property to the Government."[7] 31 U.S.C. § 3729(a)(1)(G); *see also* D.C. Code. § 2-381.02(a)(6) (liability for person who "knowingly conceals … an obligation to pay or transmit money or property to the District"). Furthermore, Plaintiff claims he engaged in protected activity when he informed the District of Columbia, specifically officials at the Office of the Inspector General, that certain Medicaid payments should have been "suspended." Am. Compl. ¶¶ 64, 81; *see also* Pl.'s Opp'n at 6-7. Finally, he claims that the District of Columbia retaliated against him, including terminating his employment, as a result of his reporting the allegedly fraudulent conduct by Medicaid recipients. Am. Compl. ¶¶ 67, 84.

Certain of Defendant's arguments, even in Defendant's Reply, appear to continue to focus on Defendant's apparently incorrect understanding of Plaintiff's claims, specifically the understanding that the retaliation claims are based on traditional, or "forward," false claim violations. *See* Def.'s Reply at 2. However, as explained above, Plaintiff has clarified that his False Claims Act retaliation claims are based solely on the possibility of a *reverse* false claim violation. Defendant addresses only a single argument at Plaintiff's retaliation theory, rightly understood. Defendant argues that Plaintiff has failed to identify *any obligation* to pay either the District or the United States Government that was stymied by the District's concealment of the information provided by Plaintiff. Before addressing whether this argument is, in fact, fatal to Plaintiff's retaliation claim, the Court notes that Defendant seems to persist in misunderstanding Plaintiff's claim in yet an additional way. Defendant argues that a necessary precondition for a reverse false claim violation is an obligation to pay the Government at the time of the false

---

[7] Plaintiff never alleges a violation of the sub-provisions establishing liability for a person who "makes, uses, or causes to be made or used, a false record or statement material to an obligation" or for a person who "improperly avoids or decreases an obligation." 31 U.S.C. 3729(a)(1)(G). Nor does Plaintiff ever allege that he was the victim of retaliation for investigating or otherwise pursuing such violations.

11

statement. *See* Def.'s Reply at 3-4. But, notably, Plaintiff's reverse false claim violation does not involve a *false statement*; it simply involves the *knowing concealment* of "an obligation to pay or transmit money or property to" the District of Columbia and to the United States Government. 31 U.S.C. § 3729(a)(1)(G); D.C. Code. § 2-381.02(a)(6). Defendant does not explain how this argument is applicable to retaliation claims based on unlawful concealment.

In any event, Defendant's argument fails for a simple reason: the District of Columbia is relying on cases interpreting an outdated version of the False Claims Act. It may be true that, as of 2006, "[m]ultiple courts, however, ha[d] consistently held that this term [obligation] means a present, existing debt or liability, owed at the time the alleged false statement is made, and not some future or contingent liability." *Hoyte v. Am. Nat. Red Cross*, 439 F. Supp. 2d 38, 43 (D.D.C. 2006) (citing cases), *aff'd*, 518 F.3d 61 (D.C. Cir. 2008). However, prior to the actions underlying this case, Congress amended the False Claims Act to broaden the meaning of "obligation" with respect to reverse false claims. As currently defined, obligation "means an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3). Indeed, it appears that Congress amended this definition, at least in part, to explicitly overrule the set of decisions on which Defendant bases its argument. *See* S. Rep. 111-10, at 14, (2009), reprinted in 2009 U.S.C.C.A.N. 430, 441 ("[T]his legislation addresses current confusion among courts that have developed conflicting definitions of the term 'obligation' … . The term 'obligation' is now defined … and includes fixed and contingent duties owed to the Government–including fixed liquidated obligations such as judgments, and fixed, unliquidated obligations such as tariffs on imported goods.") (footnotes omitted). The analogous provision of the D.C. False Claims Act

was amended, effective March 18, 2013, to include a definition of an obligation identical to the revised Federal definition. *See* Medicaid Fraud Enforcement and Recovery Amendment Act of 2012, 2012 District of Columbia Laws 19-232 (Act 19-549), § 2(a).

Ultimately, it may be true that Plaintiff's retaliation claims are not based on the type of *obligations* that are the necessary foundation for reverse false claims under the Federal False Claims Act or under the District of Columbia False Claims Act. However, Defendant has not even made that argument, based on the applicable law, let alone made the showing necessary to prevail on a motion to dismiss. Because Defendant has not shown that Count 3 and Count 4 of the Amended Complaint fail to state a claim upon which relief may be granted, the Court denies Defendant's partial motion to dismiss.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, it is hereby **ORDERED** that Defendant's [13] Motion to Dismiss Counts 3 & 4 of Amended Complaint is DENIED.

It is further **ORDERED** that Defendant shall file its Answer by no later than **June 1, 2016**.

The Court will set an Initial Scheduling Conference by a separate order.

Dated: April 28, 2016

                                                /s/
                                               COLLEEN KOLLAR-KOTELLY
                                               United States District Judge